[Cite as *State v. Popham*, 2026-Ohio-2350.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
LICKING COUNTY, OHIO

| | |
|---|---|
| STATE OF OHIO, | Case No. 2025 CA 00087 |
| Plaintiff - Appellee | Opinion & Judgment Entry |
| -vs- | Appeal from the Court of Common Pleas of Licking County, |
| PAULA S. POPHAM, | Case No. 2024 CR 00726 |
| Defendant - Appellant | Judgment:  Affirmed |
| | Date of Judgment:  June 18, 2026 |

BEFORE: Craig R. Baldwin, Kevin W. Popham, and David M. Gormley, Judges

APPEARANCES: Jenny R. Wells (Licking County Prosecuting Attorney) & Kenneth W. Oswalt (Assistant Prosecuting Attorney), Newark, Ohio, for Plaintiff-Appellee; Brian A. Smith, Fairlawn, Ohio, for Defendant-Appellant.

*Gormley, J.*

**{¶1}**  Defendant Paula Popham admitted at a trial-court hearing that she had violated the terms of her felony community-control supervision, and that admission prompted the trial judge to terminate Popham's supervision period and impose a prison term.  Popham now argues here that her admission and its consequences should be undone because the trial judge, in her view, should have told her that she could retain counsel of her own choosing before she, with the assistance of appointed counsel, entered her admission.  She argues, too, that she should have immediately been given a lawyer and should have been permitted to question her probation officer at the initial probable-cause hearing where the alleged violation was first presented in court.

**{¶2}**  Because Popham did not raise any of these concerns in the trial court, and because none of them can rightly be characterized as a plain error, we affirm.

**The Key Facts**

{¶3} Popham was placed under community-control supervision in March 2025 for the fourth-degree-felony offense of unlawful transaction in weapons. Several months later, the State moved to revoke Popham's community control, alleging that she had committed several violations: (1) twice testing positive for the use of methamphetamine, (2) failing to enter and complete a drug-treatment program as her probation officer had directed, and (3) absconding from supervision by jumping out of a moving vehicle and running away on foot while she was being driven to a drug-treatment facility. The probation officer's written allegations prompted the trial judge to issue an arrest warrant for Popham.

{¶4} The day after Popham was arrested on that warrant, a trial-court magistrate held a probable-cause hearing and formally advised Popham about the alleged violations listed in the State's violation motion. At that initial hearing, the magistrate told Popham that she had "a right to an attorney" and that if she could "not afford" to pay for one, "then one will be appointed to you." The magistrate also asked Popham, who at that point was unaccompanied by a lawyer, whether she had completed the paperwork to apply for appointed counsel. In response, Popham said that she believed she already had an attorney on the case, and the magistrate then directed her to complete the paperwork again so that counsel could be reappointed.

{¶5} Next, without receiving any testimony beyond the written under-oath statement made by the probation officer when that officer asked for the arrest warrant, the magistrate found probable cause to believe that Popham may have violated her community-control obligations. The magistrate set bail and noted that the case would be scheduled for a final hearing before the assigned trial judge.

{¶6} Three days later, Popham filled out and signed the financial-disclosure form prescribed by Ohio Adm. Code 120-1-03(J), indicating that she was — in the words printed on that form — "financially unable to retain private counsel without substantial hardship" to herself or her family. Popham did not ask the trial judge to set aside the magistrate's probable-cause finding or raise any questions about her right to employ a lawyer of her choosing. The trial court, after receiving a copy of Popham's financial-disclosure form, promptly appointed a public defender to represent Popham at the next hearing.

{¶7} Then at that final violation hearing before the trial judge the following month, Popham appeared with her appointed counsel. She waived her right to contest the allegations against her and admitted that she had in fact violated her community-control obligations. The trial judge accepted that admission, revoked Popham's community control, and imposed a prison term for the F4 weapon-related offense in the case.

{¶8} Popham never objected — whether at the probable-cause hearing, at the final hearing, or in writing during the five-week period between those two hearings — to the legal-representation information provided to her by the magistrate at the initial hearing, and she likewise never objected to the magistrate's probable-cause finding or to the process through which the magistrate reached that finding.

**The Magistrate's Failure to Tell Popham That Popham Could Hire Her Own Attorney Was Not Plain Error**

{¶9} In her first assignment of error, Popham contends that her admission to having violated her community-control obligations must be undone because neither the

magistrate nor the trial judge ever told her that she had a right to hire counsel of her own choosing. We decline to embrace that argument.

{¶10} Because Popham never raised this objection below, our review is a narrow one. "An error 'that was not called to the attention of the trial court at a time when the error could have been avoided or corrected by the trial court' is deemed forfeited absent plain error." *State v. Bright*, 2025-Ohio-725, ¶ 7 (5th Dist.), citing *State v. Haudenschild*, 2024-Ohio-407, ¶ 15 (5th Dist.). Plain error is reserved for mistakes that are "on the record, palpable, and fundamental," which we correct "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Bright* at ¶ 10. And above all, the appellant must show that the claimed error affected his or her substantial rights, meaning that the alleged error changed the outcome below. *Bright* at ¶ 16.

{¶11} The advisement spelled out in the first sentence of Criminal Rule 32.3(B) — which tells us that a defendant accused of violating any community-control obligations has "the right to be represented by retained counsel" and "shall be so advised" — is a nonconstitutional one, and a trial court need only substantially comply with it. *State v. Yerkey*, 2024-Ohio-4849, ¶ 14-15 (7th Dist.) (a revocation hearing "is not a criminal trial but an informal hearing," and "advisement . . . of the right to retained counsel . . . is a nonconstitutional right"). A defendant who, rather than hiring his or her own lawyer, asks the court to appoint one for him or her forgoes the right to retain counsel, and a court that honors that kind of request is viewed as having substantially complied with the rule even if the judge or magistrate never mentions the right to retain counsel. *Id.* at ¶ 16-17 (although the trial judge failed to strictly and literally comply with Crim.R. 32.3(B), a

defendant essentially surrendered any right to retain counsel when that defendant requested the appointment of counsel).

{¶12} The advisement does its real work in those situations where a non-indigent defendant might initially, without counsel, be inclined to admit to an alleged community-control violation. We and other appellate courts, citing the "right to . . . retain[] counsel" in Criminal Rule 32.3(B), have in fact overturned some uncounseled community-control-violation admissions. *See, e.g., State v. Tilley*, 2018-Ohio-2922, ¶ 15, 19 (4th Dist.) (reversing where the defendant entered an admission without counsel, was never advised of the right to retain counsel, and signed no written waiver); *State v. Mowery*, 2002-Ohio-4753, ¶ 27 (5th Dist.) (reversing where the unrepresented defendant was never advised of his right to counsel and was found in violation at a contested hearing).

{¶13} Today's case is different. When Popham, at the final community-control-violation hearing, admitted to the alleged violations, she was not an unrepresented defendant. Instead, she appeared at that final hearing with appointed counsel, and she there admitted the violations with her counsel by her side. And that admission was made (1) after the magistrate, at the initial hearing, had told Popham that she had a right to counsel and that an attorney could be appointed to represent her if she could not afford to hire one herself, (2) after Popham had filled out the public-defender paperwork to request the appointment of an attorney (doing so by signing a document that called for her to certify that she was "unable to retain private counsel)," (3) after an attorney, between the first and second hearings, was appointed to represent Popham, and (4) after Popham had time to consult with that appointed counsel before the final hearing. And Popham never, at any point along the way, voiced any interest in hiring her own lawyer, just as she never expressed any concerns about the services of her court-appointed lawyer.

{¶14} On these facts, we conclude that the trial court substantially complied with Crim.R. 32.3(B), in much the same way that a trial court in the Seventh District's *Yerkey* case had done.

{¶15} The plain-error standard itself pushes us to reach the same conclusion by a different route because Popham cannot show that strict compliance by the trial court with the first sentence of Criminal Rule 32.3(B) would have changed anything. Popham certified to the truth of the information that she listed on the financial-disclosure form that she signed just three days after the initial hearing before the magistrate, and she indicated on that form that she could not afford to retain counsel. In short, the retained-counsel option that she now says was improperly taken from her by the trial court was one that she herself indicated was not an option she had any desire (or ability) to claim.

{¶16} And her suggestion that a retained lawyer would have produced a better result is precisely the sort of speculation that cannot establish prejudice, particularly where she chose to admit the alleged violations. *See State v. Reed*, 2023-Ohio-1161, ¶ 23 (2d Dist.) (a counseled admission to a community-control violation "makes it impossible" to find a reasonable probability that the result "would have been different"). Popham's first assignment of error is overruled.

## Popham's Asserted Shortcomings at the Probable-Cause Hearing Furnish No Ground for Reversing the Revocation

{¶17} In her second assignment of error, Popham contends that she was denied due process — and the assistance of counsel — at her first court appearance after her arrest on the warrant where she appeared without counsel and where a magistrate found probable cause to believe that Popham may have violated her community-control conditions based on the probation officer's sworn written allegations. This appellate

claim by Popham, too, was never presented to the trial court, so we review it only for plain error. *Bright*, 2025-Ohio-725, at ¶ 7 (5th Dist.). *See also State v. Hofacker*, 2002-Ohio-2291, ¶ 6 (6th Dist.) ("Failure to timely object to due process violations during a parole or probation revocation proceeding waives any error") (citation and quotations omitted).

**{¶18}** Popham's arguments on this second issue likewise fall short because the right to counsel had not yet attached at that first hearing. As this court has explained, Crim.R. 32.3(B) "refers to the final hearing," and "the first time that the defendant is entitled to representation is at the final hearing." *State v. Cogar*, 2006-Ohio-5218, ¶ 18 (5th Dist.). *See also State v. Tonkinson*, 2020-Ohio-3623, ¶ 29 (7th Dist.) ("there is no . . . right to counsel at a preliminary probable cause hearing"). Popham cannot complain about the absence of a lawyer — or about the lack of any objections that an absent lawyer might have lodged — at a stage where she was not entitled to a lawyer's help.

**{¶19}** The due-process piece of her argument fares no better. A defendant facing the possible revocation of community-control supervision is entitled to an initial or probable-cause hearing, but that hearing serves a limited purpose: "to prevent the incarceration of a probationer without probable cause and to allow independent review of the charges against him while information is fresh and sources are available." *State v. Delaney*, 11 Ohio St.3d 231, 233 (1984). Because the hearing addresses only interim confinement, a reviewing court is without power to remedy time a probationer has already served in custody, and a flawed or even omitted probable-cause hearing "is not a basis for reversal of the trial court's final revocation determination" unless the defendant proves actual prejudice. *Id*. at 234. Bare allegations of prejudice will not do.

**{¶20}** Bare allegations, though, are all that Popham offers. Her theory — that if only she had been permitted to pose questions to the probation officer and if only she had

been permitted to present her own evidence on the day after her arrest, the allegations against her would have been dismissed by the magistrate — is pure speculation.  The record, in any event, forecloses any claim of prejudice, given that Popham at the final hearing before the trial judge, with counsel by her side, admitted that she had in fact committed the very violations alleged by her probation officer.  That counseled admission left no adverse witnesses to confront and no facts to contest, and it independently defeats any showing that the outcome would have been different had the probable-cause hearing been conducted differently.  See *State v. Reed*, 2023-Ohio-1161, ¶ 17, 23 (2d Dist.).  Finding no plain error, we overrule Popham's second assignment of error.

**{¶21}** For the reasons explained above, the judgment of the Court of Common Pleas of Licking County is affirmed.  Costs are to be paid by Appellant Paula Popham.

By: Gormley, J.;

Baldwin, P.J. and

Popham, J. concur.